Tbe opinion of tbe Court was delivered by
GrLOVER, J.
Tbe Court bas examined tbis case with that careful and anxious consideration wbicb its importance demands. Not only tbe character of tbe offence and tbe nature of tbe punishment wbicb follows conviction, but tbe points submitted, both constitutional and legal, require that tbe prisoner’s appeal shall be decided on mature deliberation.
Tbe first ground alleges “that tbe presiding judge erred in overruling tbe motion made by defendant to call over tbe jury for challenge, in tbe order in wbicb they appear in tbe panel.” Tbis is almost in terms tbe same ground wbicb was taken and overruled in tbe State vs. Sims, (2 Bail. 29 ;) but we presume from tbe whole tenor of tbe argument, (so fully and earnestly pressed upon tbe attention of tbe Court, both in this and in tbe case of tbe State vs. Price,) that tbe error wbicb it was intended to specify is — that tbe jurors were not presented for challenge according to tbe method prevailing before tbe adoption of tbe late regulation on tbe subject.
Tbe mode pursued by tbe circuit judge in presenting tbe jurors for challenge, was in conformity to tbe 97tk Bule of Court, adopted at November Term, 1856, wbicb directs, that " Hereafter in tbe formation of a jury for tbe trial of a felony, when tbe right of peremptory challenge is claimed and allowed, a child under ten years of age, shall, in tbe presence of tbe Court, draw one from tbe names of all tbe jurors in attendance, wbicb one having answered, shall be presented to tbe accused, and so on until in regular course tbe panel may be exhausted or a jury be formed.”
*409 Two objections have been taken in tbe argument against tbis regulation:
1. Tbat it violates tbe 6tb Sec., 9tb Art., of tbe Constitution of tbis State, and
2. Tbat if constitutional, provision bas been made in Acts of Assembly, ordering in wbat manner jurors shall be presented for challenge, and tbat tbe 97th Eule, prescribing a different mode, is illegal.
1. Tbe import of tbe words, “trial by jury as heretofore used in tbis State,” in tbe article and section of tbe Constitution referred to, was elaborately considered in the case of Cregier vs. Bunton, (2 Strob. 487;) and in answer to tbe ground taken here, it would be fruitless to attempt to add to tbe able opinion of Evans, J. Having applied tbe rules of construction necessary to ascertain tbe meaning of tbe framers of tbe Constitution, and having shown tbat tbe Legislature, since tbe adoption of it, bad sustained tbe views which be, as tbe organ of tbe Court expressedj be concludes, tbat tbe Constitu • tion intended to preserve inviolably tbe trial by jury as an institution — as a tribunal for tbe trial of issues of fact; but tbat tbe framers of it did not intend to prohibit all changes in tbe mode of selecting tbe jury. Tbe manner of drawing, tbe qualification, tbe right of challenge, tbe mode in which, they shall be presented for challenge, &c., are preliminary to tbe trial, “and do not enter essentially into tbe idea of a jury trial.” To tbe conclusive reasons on which tbe decision in Cregier vs. Bunion rests, a single remark may be added. It is insisted tbat tbe late rule violates tbe Constitution, and tbat tbe practice prevailing before was conformable to it. When tbe Constitution was adopted, only one jury, a petit jury, was empannelled at tbe Court of General Sessions, for tbe trial of all criminal causes; yet tbe Legislature in 1791, (7 Stat. 271, Sec. 6,) directed tbat two juries shall always be formed to try *410 all issues with wbicb they maybe charged. If “trial by jury, as heretofore used in this State,” means as it was regulated by the various Aets of Assembly to 1790, then not only the Act of 1791, but the practice before the late Eule of Court and the Eule also, are in violation of the Constitution. As a tribunal to determine all issues of fact, the trial by jury is forever inviolably preserved by the paramount law; but all the steps necessary to prepare and to organize it, are regulated either by statute or rule of Court.
2. It is insisted that the 97th Eule prescribes a mode of presenting each juror to the prisoner, contrary to the provisions of the Acts of Assembly.
At various times the Legislature has authorized the judges to make rules either for the general dispatch of business, or to carry out the provisions of some special Act. The 4th Sec. of the Act of 1791, (7 Stat. 262,) provides, “ that the said Courts may, from time to time, make such just and reasonable rules and orders for the more regular and convenient conducting and effectual dispatch of business therein, as to them shall seem necessary and proper.” It is only where the law is silent that rules are adopted to regulate the procedure of the Court; and if the mode in which each juror is required to be presented to the prisoner for challenge, by the 97th Eule, violates an Act of Assembly prescribing a different mode, the rule cannot be enforced.
The Act of 1781, (1 Brev. Dig. 447, Sec. 15,) directs that from the names of the persons who shall have been duly summoned, and shall appear to serve as petit jurors, the chief justice “ shall cause twelve persons to be drawn by a child, under the age aforesaid,” (ten years,) “and the persons so drawn shall serve on all trials at such Court; but in case any of the jurors so drawn shall be challenged, and the challenge allowed, or shall absent themselves or neglect to attend, that *411 then tbe names of other persons shall be drawn out of the said box or glass, to fill up and complete the said jury.” When the Constitution was adopted, this was the mode in which jurors were drawn and presented to the prisoner for rejection; but the Act of 1791, (7 Stat. 271,) introduces material changes in this respect. The 6th section provides, that “ out of the whole number drawn and summoned for each of the said County or Circuit Courts, two juries shall always be formed, whose duty it shall be well and truly to try all the issues with which they may be charged, and to execute all the writs of inquiry which may be delivered to them respectively.” Instead of one petit jury to serve on all criminal trials at each Court of General Sessions, and one Common Pleas jury to serve in the trial of all civil causes, this Act requires that two juries shall be empannelled to try all issues, criminal and civil; omitting the provision in the Act of 1731, that in case any of the jurors so drawn shall be challenged, and the challenge allowed, &c., the names of other persons shall be drawn out of the box, &c. Neither the Act of 1791, nor any subsequent Act, has directed that any particular order shall be pursued in drawing the names of the jurors to be presented to the prisoner for challenge. The practice prevailing before the late rule of Court was adopted, was to present juries No. 1 and 2 successively, beginning with the foreman of each, and having exhausted them before completing a jury, then to call the other jurors in attendance in the order in which their names were drawn on the first day of the term. This cannot be said to be conformable to an Act which provides but one jury, and when that is exhausted, directs that the names of the other jurors shall be presented as they ■ are drawn out of the box or glass. In support of the appeal, we are referred to the case of the State vs. Sims, (2 Bail. 29.) The position taken in that case was, that the jurors should be called in the order in which their names appeared on the panel annexed to the venire; and in reply, Johnson, J., says, *412 “ A call of tbe names in tbe order in wbicb they stood on tbe venire, is'opposed to tbe positive enactment of tbe Legislature, and is not sanctioned by the usage and practice of tbe Court.” If tbe judge meant that it was opposed to tbe Act of 1731, (tbe only one making any provision on tbe subject, and which, in this respect, is superseded by tbe Act of 1791,) be is strictly correct; for neither by statute, rule of Court, nor by practice, have tbe names of tbe jurors been called for challenge in tbe order in wbicb tbey are entered on tbe panel. That was tbe question submitted and decided in iSims’ case. Referring to tbe Act of 1791, the judge also says, “in making up a jury for tbe trial of a prisoner entitled to challenge, tbe uniform practice is to begin by calling tbe foreman of tbe jury No. 1, to be sworn, and then tbe others of .that jury, in tbe order in wbicb tbey are drawn; if any are challenged, then to call tbe names'of tbe jury No. 2, in tbe same order. If that is exhausted, then tbe names of tbe supernumerary jurors are to be drawn from the box or glass, until tbe jury for tbe trial of tbe prisoner is completed.” Until tbe late rule of Court, it was according to this uniform practice, and not by virtue of any statutory regulation, that tbe jurors were presented to tbe prisoner for challenge. (State vs. Brown, 3 Strob. 508.) What Act directs, that after tbe two juries are exhausted, tbe supernumeraries shall be called in tbe order in wbicb tbey were drawn on tbe first day of tbe term, wbicb, in tbe Stale vs Brown, is declared to be tbe established practice; or that their names shall be drawn from tbe box or glass wbicb, in Sims’ case, was also referred to uniform practice?
Trial by jury is guarantied by tbe Constitution — tbe right of challenge is secured by legislative enactment, and tbe mode in wbicb jurors are presented to tbe prisoner, in bis exercise of that right, depends upon practice, or is regulated by rule of Court.
The. 97th Rule does not abridge any privilege conferred on. *413 a prisoner necessary to secure an impartial tribunal and a fair trial. He is entitled to bave a copy of tbe indictment, a list of tbe panel, and three days are allowed him to prepare for Ms trial, within which time he may decide upon his challenges, either peremptory or for cause. The innocent may safely trust to juries drawn, summoned and empannelled, as the law and the rule of Court direct, and it cannot be a serious objection 'to such tribunals, that by them the guilty are sometimes convicted.
It appears from the report, that the second ground of the appeal presents this question, — were the declarations of Mary Bowen to the prisoner respecting threats that Jemima Watts said were made against him by any of the party that night, properly excluded ? It is enough that Jemima Watts was not present; but the prisoner had the benefit of such evidence. There was proof that he had heard of these threats from her, and said he never- believed them, and could not, therefore, have acted on such threats.
The other grounds allege errors in.the charge of the circuit judge, and as this Court approves his instructions to the jury, they will be briefly noticed. The distinction between murder and manslaughter was clearly drawn, and the definition of each correctly given, and the jury was left to apply the principles of law to the circumstances of the case. The evidence does not show that the prisoner killed in self-defence; but if a difference of opinion could be indulged between felonious and excusable homicide, the charge to the jury, in reference to this part of the defence, was calculated to give the prisoner the full benefit of it.
Perceiving no sufficient reason which can avail the prisoner in support of his appeal, the motion for a new trial is dismissed.
O’Neall, Whithee, and MüNeo, JJ., concurred.

Motion dismissed.